IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBORAH SCALES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT, | ) ) ) | CV-00-AR-0317-S |
| Defendant. | ) ) | |

**ENTERED**
**DEC 19 2000**

**MEMORANDUM OPINION**

Before the court is a motion by defendant, Housing Authority of the Birmingham District ("HABD"), for summary judgment. Plaintiff, Deborah Scales ("Scales"), claims that HABD retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. For the reasons set forth in the opinion below, defendant's motion is due to be granted.

**PERTINENT AND UNDISPUTED FACTS**

HABD is an independent public agency which administers low income public housing within Birmingham, Alabama, and Section 8 housing for certain areas within Jefferson County, Alabama. On November 27, 1989, Ms. Scales began her employment with HABD as a supervisor in its child day care program. In 1992, HABD terminated the day care program, and transferred Ms. Scales to a clerk position in the Purchasing Department.

On December 29, 1994, Ms. Scales filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been denied a promotion based on her race and gender. On April 24, 1996, Ms. Scales received a right to sue notice from the EEOC, and on July 22, 1996, she timely filed a lawsuit against HABD. On September 23, 1997, Ms. Scales amended her complaint alleging that HABD discriminated and retaliated against her on the basis of her gender and violated the Equal Pay Act. In April 1998, the parties settled that lawsuit.

On November 2, 1998, HABD hired Theresa Russell ("Russell") as manager of the Purchasing Department. Ms. Russell was Ms. Scales immediate supervisor at the time of the events here complained of. During Ms. Russell's first week of employment, HABD Executive Director, Ralph Ruggs ("Ruggs"), informed Ms. Russell that Ms. Scales had filed the earlier lawsuit against HABD in 1996. According to Mr. Ruggs, he provided Ms. Russell with this information because he anticipated that Ms. Russell would eventually hear about the 1996 lawsuit anyway through other HABD employees, and he did not want the information to color Ms. Russell's opinion of Ms. Scales.

According to Ms. Scales, after Ms. Russell learned about Ms. Scales' prior lawsuit against HABD, "Russell began to yell and scream and use harsh tones whenever she spoke to [Ms. Scales].

2

Russell went out of her way to find fault with everything [Ms. Scales] did." *Pla. Reply*, at 4. As a result of these, and other incidents, on January 29, 1999, Ms. Scales wrote a memorandum to Mr. Ruggs and Ms. Russell wherein she requested a meeting with Mr. Ruggs and Ms. Russell. Ms. Scales, but not Ms. Russell, was notified that the requested meeting was scheduled for February 1, 1999. On the morning of February 1, 1999, Ms. Russell requested that Ms. Scales meet with her at 9:00 a.m. to discuss Ms. Scales' concerns. Ms. Russell made this request based on HABD's interdepartmental communication policy, which provides that:

> [a]ll employees are expected and required to follow the chain of command in communicating, reporting, or expressing concerns, opinions or requesting information affecting, concerning or relating to any department or area of supervision of the HABD . . . Chain of command is defined . . . as initiating with the employee's immediate supervisor and moving upward in accordance with the organizational chart to the Board of Commissioners.

*Carter Affidavit Attachment A*, at 36. At the meeting, Ms. Scales refused to discuss her concerns with Ms. Russell, believing in part that such a meeting would be fruitless, and sought to involve a third party. Ms. Scales proceeded to the Human Resources Department to obtain an interpretation of the interdepartmental communication policy from Patricia Carter ("Carter"), HABD's Human Resources Director. Ms. Scales asked Ms. Carter, "when you are not

3

getting satisfaction from your immediate supervisor, am I correct in my assumption of the policy where it says you can go to the next in the chain [of command]." Ms. Carter affirmed Ms. Scales interpretation of the policy, but Ms. Scales did not inform Ms. Carter that moments earlier, Ms. Russell had requested that Ms. Scales discuss her concerns regarding their relationship prior to proceeding up the chain of command.

After leaving Ms. Carter's office, Ms. Scales proceeded to Mr. Ruggs' office for her scheduled meeting. Because Ms. Russell had not been notified of the meeting, she was called to Mr. Ruggs' office. According to Ms. Russell, she was "shocked" to find Ms. Scales in Mr. Ruggs' office since she had told Ms. Scales moments earlier that Ms. Scales need to discuss any problems with her before going to the next person in the chain of command. During the meeting, Ms. Scales reported to Mr. Ruggs that Ms. Russell, among other things, *see infra*, at 12, "had yelled at her, been disrespectful to her, [and] had used harsh tones" when speaking to her. *Pla. Reply*, at 8. The meeting concluded with Mr. Ruggs suggesting that Ms. Scales and Ms. Russell resolve their issues between themselves.

On February 2, 1999, Ms. Russell met with Ms. Scales. During the meeting she issued to Ms. Scales a written reprimand for violating the HABD policy regarding interdepartmental

4

communications, and for insubordination. The HABD policy manual defines insubordination as "refusing a direct order of the employee's supervisor concerning a work related manner." The policy manual specifies that insubordination is a sufficient ground for disciplinary action "including oral or written warnings, demotion, suspension, and termination of employment." In accordance with HABD policy, which specifies that "all disciplinary action requires written compliance by the Human Resources Department", Ms. Carter reviewed Ms. Russell's actions in issuing the written reprimand to Ms. Scales, and signed a compliance form acknowledging that Ms. Russell had followed HABD policies and procedures.

Ms. Russell admitted being upset with Ms. Scales during their February 2, 1999, meeting because Ms. Russell believed that Ms. Scales had wrongfully accused her of harassment. Ms. Scales reassured Ms. Russell, however, that she did not accuse her of harassment:

> I told [Ms. Russell] that I didn't think I had to spell out harassment, being that I had told [Ms. Russell] that she spoke to me harshly, that she yelled, that—little things she was doing. I said well, that constitutes harassment, then. [Ms. Russell] said, well, the legal department and Mr. Ruggs calls it—calling it harassment because you have alleged a charge of harassment. And I said I have not alleged a charge of harassment. I was at the time trying to get [Ms. Russell] to

5

> control her temper or the way she spoke with
> me within the office, and that was that. I
> was not trying to file a charge of harassment,
> as she had put it in the meeting with me . . .
> [and] Mr. Ruggs.

Ms. Scales Depo. II, p. 362.

A few days after Ms. Russell reprimanded Ms. Scales, Ms. Scales had a meeting with Ms. Carter to discuss the written reprimand. Ms. Carter explained to Ms. Scales that when she interpreted the interdepartmental communication policy for Ms. Scales on February 1, 1999, she assumed that Ms. Scales had fully discussed her problems with Ms. Russell prior to proceeding up the chain of command to Mr. Ruggs.

On February 8, 1999, in accordance with HABD's Disciplinary Appeals Procedure, Ms. Scales submitted a "grievance form" to Ms. Russell asserting that she believed the reprimand was in retaliation for her 1996 lawsuit against HABD. Ms. Scales also requested that the disciplinary reprimand be removed from her file. On February 12, 1999, Ms. Russell denied Ms. Scales request on the ground that Ms. Scales failed to follow appropriate HABD policy. On February 19, 1999, Ms. Scales appealed to Mr. Ruggs, who assigned Len Williams ("Williams"), HABD's Deputy Executive Director, as the hearing officer for the appeal. In March 1999, Ms. Russell and Ms. Carter met with Ms. Scales and offered to reduce her discipline from a written reprimand to an oral warning.

6

Ms. Scales refused the offer, and requested that all disciplinary action be stricken from her personnel record. On March 17, 1999, Mr. Williams conducted the hearing, and on March 25, 1999, based on evidence presented at the hearing, he upheld Ms. Russell's decision to reprimand Ms. Scales. On April 1, 1999, Ms. Scales appealed Mr. Williams decision to the HABD Board of Commissioners (the "Board").

On April 28, 1999, Ms. Scales filed an EEOC charge, alleging that HABD retaliated against her for filing a previous lawsuit against HABD. Because of Ms. Scales' filing with the EEOC on April 28, 1999, the Board stayed Ms. Scales' appeal. On November 17, 1999, Ms. Scales received a right to sue letter from the EEOC, and on February 8, 2000, Ms. Scales filed the instant action against HABD.

## SUMMARY JUDGMENT STANDARD

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard

means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

Defendant's motion for summary judgment should be denied "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997)(quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)). If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### THE RETALIATION CLAIM

In order to establish a prima facie case of retaliation, Ms. Scales must show that: (1) she engaged in protected activity; (2) that HABD was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal link between the protected activity and the adverse action. *See Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999); *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

To satisfy the first element, it is sufficient that an

employee have a good faith, objectively reasonable belief that his or her activity is protected by the statute. *See Clover v. Total System Services, Inc.*, 157 F.3d 824, 827 (11th Cir. 1998) (employee claiming retaliation for opposing employer's conduct must have good faith, objectively reasonable belief that such conduct was unlawful under Title VII). Once a plaintiff establishes all the elements of his or her prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). If the employer offers legitimate reasons for the employment action, the plaintiff must demonstrate that the employer's proffered explanation is a pretext for retaliation. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

An important question, if not the most important question, leading to a determination of whether Ms. Scales has established her prima facie case of retaliation, is whether she engaged in statutorily protected activity.

### Statutorily Protected Activity

Under Title VII, both "participation" activities and "opposition" activities constitute statutorily protected conduct. The statute states that it is an unlawful employment practice for an employer to discriminate against an employee, "because he has

9

opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff engages in "statutorily protected expression" even when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997). It is insufficient for a plaintiff, however, "to allege [her] belief in this regard was honest and bona fide; the allegations and the record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.*

Ms. Scales contends that she engaged in two forms of statutorily protected activity: (1) the filing of her lawsuit on July 22, 1996, alleging violations of Title VII against HABD satisfied the "participation" requirement under Title VII for this lawsuit; and (2) when Ms. Scales' met with Mr. Ruggs and Ms. Russell, during which she allegedly complained of Ms. Russell's retaliatory conduct, she was opposing a practice made unlawful by Title VII, and thus engaged in statutorily protected activity. *Pla. Reply*, at 24. The court examines whether Ms. Scales actions constitute protected activity under either the participation or the

10

opposition clauses of Title VII.

### "Participation Clause"

First, Ms. Scales contends that she engaged in activity protected by the participation clause. The court disagrees. As mentioned above, the participation clause covers participation in "an investigation, proceeding, or hearing." This clause protects proceedings which occur in connection with or after the filing of a formal charge with the EEOC. *See Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 & n.2. (2000) (stating that, "at a minimum, some employee must file a charge with the EEOC or otherwise instigate proceedings under the statute for the conduct to come under the participation clause."). While it is undisputed that Ms. Scales filed a lawsuit against HABD in 1996, this court is unwilling to interpret the statutory requirements of Title VII as liberally as Ms. Scales apparently interprets them. Ms. Scales fails to cite any Eleventh Circuit precedent supporting her contention that an employee's prior Title VII lawsuit is protected activity under the participation clause in a subsequent lawsuit. Because no EEOC complaint had been filed before Ms. Scales' received a written reprimand from Ms. Russell,[1]

---

[1] Of all the alleged retaliatory conduct by Russell, the written reprimand is the only conduct that even resembles an adverse employment action.

11

her 1996 lawsuit did not constitute protected expression under the participation clause of Title VII. If anything, Ms. Scales allegations fit more closely within the opposition clause. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989) (stating that activity of employee before instigation of statutory proceedings comes under opposition clause, because filing of a charge or complaint with EEOC is prerequisite to protection under participation clause).

### "Opposition Clause"

Second, Ms. Scales contends that she was engaged in protected activity under the opposition clause when she complained to Mr. Ruggs about Ms. Russell's behavior. Ms. Scales contends that in retaliation for her 1996 lawsuit against HABD, Ms. Russell engaged in the following conduct: (1) Ms. Russell used harsh tones, and yelled and screamed when she spoke to her; (2) Ms. Russell isolated Ms. Scales from other HABD employees; (3) Ms. Russell intentionally looked for faults in Ms. Scales work performance; (4) Ms. Russell followed Ms. Scales around the building; (5) Ms. Russell discussed Ms. Scales with other HABD employees; (6) Ms. Russell questioned HABD employees about their conversations with Ms. Scales; (7) Ms. Russell spoke to Ms. Scales "as if she were a child" (Ms. Scales Depo. I Exh. I); (8) Ms. Russell threw papers at Ms. Scales; (9) Ms. Russell refused Ms. Scales leave requests; (10) Ms. Russell

12

unfavorably evaluated Ms. Scales work performance; and (11) Ms. Russell gave Ms. Scales a written reprimand for violating the interdepartmental communication policy for insubordination.

Opposition clause acts, unlike participation clause acts, "are taken in the context of the ordinary business environment and involve employers and employees as employers and employees." *Total System Services*, 221 F.3d at 1176. HABD asserts that, even if taken as true, all of Ms. Scales complaints about Ms. Russell do not amount to a legally redressable retaliation claim. Furthermore, HABD contends that even if Ms. Scales subjectively believed that HABD retaliated against her, no objective and reasonable person in her position could have reached the same conclusion.

In *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989), the Eleventh Circuit recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he or she shows that he or she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices and approved those practices. The Eleventh Circuit emphasized in *Little v. United Technologies*:

> that a plaintiff's burden under this [reasonable belief] standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed

13

> that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

103 F.3d 956, 960 (11th Cir. 1997)(emphasis in original). The court finds that Ms. Scales was not objectively reasonable in her belief that HABD was engaged in unlawful employment practices. Although Ms. Russell's alleged behavior was inappropriate, and in some instances mean-spirited, it was not discriminatory. "Title VII addresses discrimination. [It] is not a shield against harsh treatment at the workplace.  Nor does the statute require the employer to have good cause for its decisions.  The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (1984) (internal citations omitted). *See also Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.") (internal citations omitted).

Assuming *arguendo* that Ms. Scales had satisfied all the

14

elements of her prima facie case, Ms. Scales has failed to show pretext to rebut HABD's proffered legitimate nondiscriminatory reason for issuing the reprimand.[2] Ms. Scales relies predominantly on *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), to support her argument that she engaged in statutorily protected conduct. Ms. Scales would have this court conclude that *Holifield* stands for the proposition that "complaints to supervisors constitute statutorily protected expression." *Pla. Reply*, at 24. This court cannot reach that conclusion because the facts in *Holifield* are distinguishable from those in the instant case.

Ms. Scales' reading of *Holifield* purports that any garden-variety complaint would satisfy Title VII's statutory requirement. After close inspection, the court in *Holifield* specifically stated that the retaliation claim was based on complaints of *"racial discrimination."* *Holifield*, 115 F.3d at 1566 (emphasis supplied). The facts in the instant case do not point to any evidence that Ms. Scales complained to either Ms. Russell or Mr. Ruggs concerning

---

[2] Although the court need not consider the issue at this juncture, the court questions whether Ms. Russell's written reprimand would even satisfy element number three, an adverse employment action, of Ms. Scales' prima facie case. It does not appear that the reprimand was "objectively serious and tangible enough" to alter Ms. Scales' "compensation, terms, conditions or privileges of employment" or adversely affect her status as an employee. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 588 (2000) (internal citations omitted).

discrimination or retaliation against her based on any protected status. Ms. Scales merely complained of insults and unusual behavior. The court's role, among other things, "is to prevent unlawful [employment] practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Alexander v. Fulton County*, 207 F.3d 1303, 1340 (11th Cir. 2000)(citing *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329-30 (10th Cir. 1999)).

## CONCLUSION

The court is not aware of *any* decisions by the Eleventh Circuit or elsewhere that support Ms. Scales contention that a prior lawsuit alleging violations of Title VII, a case which had years ago been settled by the parties, can satisfy the "participation" requirement under Title VII in a completely separate and subsequent lawsuit. Moreover, this court finds that when Ms. Scales complained to Mr. Ruggs about Ms. Russell's conduct, she was not opposing conduct made unlawful by Title VII. To hold otherwise would be to invite a conversion of every on-the-job nuisance, personality conflict, etc., into a retaliation claim, if after the disagreement, plaintiff claims to have suffered any kind of adverse employment action. *See Farragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S. Ct. 2275, 2283 (1998) (noting that "offhand comments, and isolated incidents (unless extremely

16

serious) will not amount to discriminatory changes in the terms and conditions of employment."). Because Ms. Scales has failed to satisfy element one of her prima facie case for retaliation, her claim ultimately fails as a matter of law. Accordingly, HABD's motion for summary judgment will be granted by a separate and appropriate order.

DONE this 19th day of December, 2000.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE